**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:21-cr-30148-DWD** |
| | ) | |
| **THOMAS HINES, TERRELL WINSTON, TERRENCE THOMPSON, RICHARD STARK, TAMARA PEOPLES, COREY HENDRIEX, and NEYISHA ANDERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Defendant Terrell Winston has filed a Motion to Modify Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) (Doc. 511) and an Emergency Motion for Clarification and a Hearing Regarding Compassionate Release (Doc. 521). Winston asks the Court to grant him compassionate release in order to care for his ailing parents. He also contends that he needs to take care of his sister with special needs. The Government opposes the motion. (Doc. 516). For the reasons set forth below, the motions are both **DENIED**[1].

[1] The Court has received and considered the supplement (Doc. 520) to Defendant's Motion to Amend/Correct [517] Reply to Response. (Doc. 518). Notwithstanding that the filing raises no new arguments and only supplements with a letter from a prospective employer and a recommendation letter from a life-long friend to Winston, the Court gave consideration to them even though filed almost months out of time.

**Background**

On August 08, 2023, Winston entered a plea of guilty to a two-count indictment charging him with one count of conspiracy to distribute methamphetamine and one count of money laundering conspiracy. (Doc. 1). Winston was sentenced to a term of imprisonment of 157 months on both counts to run concurrently followed by a term of five years supervised release as to count one and three years as to count 2 to run concurrently. (Doc. 472). He is currently incarcerated at FCI-Marion with an anticipated release date of September 30, 2036. (Doc. 511).

**Stated Grounds for Relief**

Winston requests compassionate release because his parents have substantial health problems and are unable to care for his sister who afflicted with autism, intellectual disabilities, chromosomal abnormalities, and mood disorder. He contends that his parents also require care due to his mother having proximal humeral disease, sickle cell anemia, and a history of breast cancer, while his father has Type two diabetes mellitus and stage three chronic kidney disease. (Doc. 511, pg. 16).

**Applicable Law**

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). But a handful of statutory exceptions exist, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A) (2018). Under this provision, a court, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after

the defendant has fully exhausted all administrative rights . . . may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. § 3553(a)] . . . if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..” 18 U.S.C. § 3582(c)(1)(A).

The existing compassionate release policy statement, United States Sentencing Guidelines Manual (“U.S.S.G.”) § 1B1.13, provides four types of “extraordinary and compelling reasons” that may justify a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) other reasons. As is relevant here, the guidelines further define family circumstances:

> **(3) Family Circumstances of the Defendant.**
>
> (A) The death or incapacitation of the caregiver of the defendant’s minor child or the defendant’s child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant’s spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant’s parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, ‘immediate family member’ refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

When a motion for compassionate release is filed by a defendant (as opposed to

the Director of the Bureau of Prisons), U.S.S.G. § 1B1.13 is not binding. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the Bureau of Prison's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

Accordingly, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies.[2] Additionally, the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180.

## Discussion

### I. Exhaustion

The United States does not argue that Winston failed to exhaust his administrative remedies. Therefore, any argument as to exhaustion is waived. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020); *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).

## II. Extraordinary and Compelling Reasons

Winston has provided numerous documents describing and establishing his family's difficult circumstances which involve some members of his family suffering from serious health conditions that render them in need of some level of care. The Court has reviewed and considered the medical information Winston provided in support of his petition.

Notably, Winston includes medical records from his mother's physicians providing diagnosis and an account of years-long treatment of his mother's sickle cell disease. Her physician states she would "greatly benefit from any assistance that may be available for her or her immediate family members." (Doc. 521, pg. 4). Winston indicates that his mother suffers from chronic pain from her condition as well as her recovery from a "major shoulder replacement surgery", which is borne out by her need for opioids to control the pain. (Doc. 521, pg. 1). He also asserts that his mother's conditions "require a caregiver to help her bathe and groom herself". (Doc. 511, pg. 16). Winston does not say who presently provides those care needs to his mother but includes a letter from her doctor that her husband "will not be able to provide the proper physical support she will need." (Doc. 518, pg. 4).

The provided medical records do not list qualities or conditions that render his mother incapacitated within the meaning of U.S.S.G. § 1B1.13(b)(3) since she is not completely disabled or confined to a bed or unable to care for herself. While she does suffer from numerous issues that make her life challenging, the medical records do not

indicate that she is entirely dependent on a caregiver. Even if she was incapacitated within the meaning of U.S.S.G. § 1B1.13(b)(3), "'[c]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver.'" *United States v. Howard*, No. 3:21-CR-30187-NJR-1, 2025 WL 1684262, at *2 (S.D. Ill. June 16, 2025) (citing *United States v. Gross*, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024)). Winston does not include such a showing of evidence that he would be the only available caregiver for his mother if she was completely disabled or confined to a bed. Nor does he provide a realistic plan describing how he could provide the necessary care. Winston "bears the burden of establishing extraordinary and compelling circumstances" and has failed to do so here. *See United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)). As such, the Court finds that Winston has failed to demonstrate that his mother's health and his desire to assist her constitute an extraordinary and compelling circumstance supporting compassionate release.

Winston also alleges that his father, who suffers from diabetes, kidney disease, sleep apnea, hypothyroidism and obesity, is similarly in need of care. (*Id.*). Winston alleges that he is the only one who can provide the necessary caretaking functions. (*Id.*). While he does provide his father's affidavit, Winston does not, however, say who presently provides those care needs for his father. Winston does not include medical records that prove his father is incapable of a caretaking function aside from the affidavits of his mother and father. *See* (Doc. 511, pg. 17-18). The only medical record regarding his father that denotes any sort of disability is a letter from his doctor stating that he "has

multiple medical conditions which [are] causing him to be in need of assistance with cleaning his home." (Doc. 511, pgs. 31, 33). Winston does give an example of his father's inability to care for himself or others in that he "was unable to lift or help his wife at home when she fell due to his own limited mobility and poor health, and had to rely on emergency services," though this does not rise to the level of incapacitation. (Doc. 517, pg. 2).

As to his father's condition, the medical records do not list qualities or conditions that render his father incapacitated within the meaning of U.S.S.G. § 1B1.13(b)(3) since he is not completely disabled or confined to a bed or unable to care for himself. The letter from his doctor states that he needs assistance in cleaning his home due to multiple medical conditions (Doc. 511, pgs. 31, 33) and the letter from his mother's doctor states that he cannot provide proper support (Doc. 518, pg. 4), not that he requires a caregiver himself. Winston states in his supplement to his Motion for Compassionate Release that his father "very recently suffered a stroke" which renders "him entirely unable to provide care for his wife or his disabled daughter. Instead, he now requires significant care himself." (Doc. 529, pg. 1). Much the same as the case with his mother, Winston fails to show that he is the only available caregiver for his father and that there are no family, friends, or others who are capable of doing so outside of the affidavits of his parents. *See* (Doc. 511, pgs. 17-18). As such, the Court finds that Winston has failed to demonstrate that his father's health and his desire to assist him constitute an extraordinary and compelling circumstance supporting compassionate release.

Winston also contends that his 28-year-old sister, Tamara, suffers from autism, intellectual disabilities, and mood/behavioral disorders. (Doc. 511, pg. 36). Her physician verifies that Tamara requires "substantial support" for deficits in social communications and restricted/repetitive behaviors, has great difficulty in expressing her wants and needs, requires a wheelchair, and needs a hip replacement. Her physician reports that "[with] all of the Winstons' health challenges, Tamara must spend most of her time with a caregiver, Nagina Wilson. With more help in the home of the Winstons, Tamara would be able to spend more time in her family home." (Doc. 511, pgs. 37-38). Winston's parents in their affidavits provide that she is "in great need of a caregiver and the expense is too much" and they "can't manage her care without a lot of help." (Doc. 511, pg. 17). She already has the assistance of a caregiver as stated in Winston's Motion for Compassionate Release. (*Id.* at 37). Winston, in his Reply states that his sister's caregiver has her own "health and personal problems that make her ineffective and inappropriate for the care of Tamara Winston." (Doc. 517, pg. 3). However, Winston does not include any evidence or documentation to support the contention that he is the only available caregiver for his sister. He further contends that Wilson's caregiving is inadequate but does not deny that the care is being administered. *See* (*Id.* at 5).

In regard to Winston's family circumstances surrounding his sister, he argues that he needs to care for her. While she does fall within the meaning of completely disabled under of U.S.S.G. § 1B1.13(b)(3), she already receives care from Nagina Wilson. (Doc. 511, pg. 37). And, while the Court does not dispute that her conditions are, in fact, extraordinary, in order for the circumstances relative to her care to rise to the level of

"compelling", there would need to be no current caregiver and no realistic alternatives available aside from Winston. And, though Winston contends that the care his sister currently receives is inadequate, it does not equate to him being the only available caregiver, nor that he can or has the training and ability to provide better care. Thus, the Court finds that Winston has failed to demonstrate that his sister's needs for care constitute an extraordinary and compelling circumstance supporting compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Winston also argues that he wishes to provide financial assistance to his family and that is an extraordinary and compelling reason to grant his request for compassionate release. In his Motion for Compassionate Release, he includes two job offers that he has received should he be released. *See* (Doc. 520, pgs. 3-4). But the financial situation of a petitioner's family do not constitute an extraordinary or compelling circumstance. *See United States v. Avila*, No. CR18-5205 BHS, 2022 WL 3346451, at *3 (W.D. Wash. Aug. 12, 2022) ("[t]he need to provide financial support, without more, has not been established as a basis for compassionate release."). And given the high level of care needs of his sister, if he was the only potential caregiver for his parents and sister, the demands of a full time job would prevent him from attending to the needs of his family. As such, the Court finds that Winston has failed to demonstrate that providing financial assistance for his family is an extraordinary and compelling reason warranting compassionate release.

Finally, even if the Court was to find that Winston has satisfied the requirements of 18 U.S.C. § 3582(c)(1)(A) and that there are the necessary extraordinary and compelling reasons for compassionate release, the applicable § 3553(a) factors still weigh against

Winston's release. Winston was sentenced to a term of imprisonment of 157 months on March 27, 2024. He received seven criminal history points for various drug possession, theft, forgery, and DUI convictions. Furthermore, he was on probation at the time he committed the offense while also maintaining a history of poor performance on probation. Releasing Winston now, just over two years into his 13-year sentence, would not provide adequate deterrence for his criminal conduct. Given the serious nature of the crimes committed, the need for adequate punishment is itself compelling.

The Court does sympathize with Winston regarding his family's challenges. The Court also commends Winston's efforts to better himself while being incarcerated. Nevertheless, the Court finds that its consideration of the applicable sentencing factors under § 3553(a) leads it to the conclusion that any sentence reduction would not serve to fulfill the purposes of sentencing nor would a reduction be warranted.

## III. Hearing Regarding Compassionate Release

By Motion dated October 13, 2026, Winston petitions the Court to hold a hearing regarding compassionate release. (Doc. 521). Defendants have no right to a hearing on a motion for compassionate release. *See* Fed. R. Crim. P. 43(b)(4); *Dillon v. United States*, 560 U.S. 827-28 (2010). Winston has supplied the Court with over one-hundred pages of documents including medical records, affidavits, and letters in support of his Motion. He has been provided with ample opportunity to provide the documentation he believes is adequate to support his motion. The Court sees no reason for a hearing in this matter. *See, e.g., United States v. Paschall*, No. 1:13-CR-45-HAB, 2021 WL 1811733, at *1 (N.D. Ind.

May 6, 2021) ("Defendant has had the opportunity to submit whatever evidence he felt appropriate to support his motion. There is no reason for any further proceedings on Defendant's request."). Accordingly, the motion for a hearing is denied.

**Conclusion**

For the reasons stated, Terrell Winston's Motion to Modify Term of Imprisonment (Doc. 511) and Emergency Motion for Clarification and a Hearing Regarding Compassionate Release (Doc. 521) are **DENIED**.

The Clerk is D**IRECTED** to close this case.

**SO ORDERED.**

Dated: October 30, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.10.30 17:04:01 -05'00'

DAVID W. DUGAN
United States District Judge